NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3303
_____

UNITED STATES OF AMERICA

v.

MALIK BLAND, a/k/a Easy,

Malik Bland,
                    Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court  No. 2-07-cr-00737-006
District Judge: The Honorable Eduardo C. Robreno

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 13, 2012

Before: SMITH, and CHAGARES, *Circuit Judges*
ROSENTHAL, *District Judge**

(Filed: September 25, 2012)
_____

OPINION
_____

*The Honorable Lee H. Rosenthal, United States District Judge for the United States District Court for the Southern District of Texas, sitting by designation.

1

SMITH, *Circuit Judge.*

A jury convicted Malik Bland of conspiring to possess with the intent to distribute crack cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1). The United States District Court for the Eastern District of Pennsylvania granted Bland a substantial downward variance from a guideline range of 292 to 365 months by imposing a sentence of 192 months of imprisonment. Bland appealed, challenging his conviction and sentence.[1] Although we will affirm his conviction, we will vacate Bland's sentence and remand this matter to the District Court. Specifically, we direct the District Court to conduct further proceedings as to the weight of crack cocaine for which Bland should be held responsible for sentencing purposes.

I.

Bland sold crack cocaine in Philadelphia at the corner of 61st Street and Glenmore Avenue. Around the same time, a group led by Kareem Smith was distributing cocaine and crack cocaine in parts of Philadelphia, Pennsylvania, and Cecil County, Maryland. Landrum Thompson worked for Smith, selling at the same street corner as Bland. In October of 2003, when one of Smith's sellers in Maryland was arrested, Smith and Thompson approached Bland about selling for them in Maryland. Bland "wanted to make money hustling." In his view, "[w]hat [he] was doing on the corner wasn't cutting it." Bland accepted the offer, and

advised Smith that he "was hungry."

Within a week of being set up in Smith's house in Maryland, Bland sold crack to an undercover officer. During that transaction, Bland gave the undercover officer a piece of paper in the event the undercover officer needed to contact Bland. The paper contained Bland's name and cell number, as well as the names of Smith and Thompson. Several days later, the undercover officer called Bland's number and asked to purchase more crack. Bland advised the undercover officer to come to his house, stating "my man is here." After the transaction was completed, Bland was arrested. He was eventually convicted of violating Maryland law and was sentenced to ten years' imprisonment.

Bland was released from prison on January 31, 2006. At some point thereafter, Bland returned to selling crack with Thompson at the corner of 61st and Glenmore Avenue.[2] On October 5, 2006, Bland was arrested and charged with possession with intent to deliver a controlled substance in violation of Pennsylvania law. He returned to jail, eventually pled guilty on January 23, 2007,

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We exercise appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[2] The transcript contains the following exchange between the prosecutor and Thompson:

> Q. When did [Bland] come and when did he stop, that is the question I'm asking.
> A. I guess he stopped October [5, 2006, when he was arrested].
> Q. In about October. And how long had he been out there at that point?
> A. A couple months.

3

and was sentenced to six to twenty-three months of imprisonment.

Subsequently, a federal grand jury sitting in the Eastern District of Pennsylvania returned a second superseding indictment, charging Bland and eight others with conspiring to distribute cocaine and crack cocaine. Bland and three of his co-defendants went to trial. A jury found each of them guilty of the conspiracy offense. Bland moved for a judgment of acquittal, challenging the sufficiency of the evidence.

During a hearing on the motion, Bland asserted that he was an independent salesman and that there was no evidence to show that he was a member of the conspiracy. In addition, he argued that he should not be held responsible for the amount of crack sold by the conspiracy while he was incarcerated on the Maryland offense. When the District Court asked the government what connection Bland had to the conspiracy during his imprisonment, the AUSA replied: "None. During the period of time when he was incarcerated, he was not involved, I agree with that a hundred percent." The Court inquired how Bland could be charged with being a member from 2002 to 2007. The AUSA replied:

> Because he was a member of the conspiracy in the early years, and as soon as he got out of jail he went right back to his role that he held before he went to jail as a seller for the same conspiracy that overlapped his incarceration. The conspiracy didn't die when Mr. Bland left. He entered, and he was in and out, just like Mr. Smith was in and out during the course of the conspiracy.

The Court noted that Smith maintained a role while he was in prison, but that Bland was "not one of the brains behind this scheme." The AUSA agreed Bland was not key to the operation and that Bland's sporadic membership presented a sentencing issue. The AUSA further stated: "I agree that during the period of time he's incarcerated, we can't attribute anything to him." In response to further questioning, the AUSA stated that "[t]here's no evidence that [Bland] had contact with any member of the conspiracy during that period of time" he was in jail. Several days after the hearing, the District Court denied the motion for judgment of acquittal.

On July 16, 2010, the District Court issued a memorandum, setting forth its findings as to each defendant's involvement in the conspiracy and the quantity of drugs for which each defendant would be held liable for purposes of computing that defendant's sentencing guideline range. Because "Bland never signified an intent to withdraw from the conspiracy (as he rejoined the . . . conspiracy immediately upon release from incarceration)," the Court concluded that he was "involved for the full three years" from October 20, 2003, through October 5, 2006 (147 weeks). The Court determined that approximately 9 ounces, or 225 grams of crack, was sold during each week of the conspiracy. "Based on [Bland's] role as a seller, incarceration due to his . . . activities, and the fact that drug quantities being distributed throughout his time in the conspiracy were 'reasonably foreseeable,'"

the Court found that the Government "demonstrated by a preponderance of the evidence that Defendant Bland [was] responsible for accomplice attribution of the average weekly crack sales[,]" totaling 37.4 kilograms of crack.

This quantity of crack cocaine resulted in a base offense level of 38, which was adjusted upwards by two levels to 40 because of a dangerous weapons enhancement. Bland's total offense level and his criminal history category of I produced a guideline range of 292 to 365 months.

At sentencing, Bland again challenged the quantification of crack for which he was responsible for sentencing purposes, emphasizing that he was involved for one week in 2003 before his arrest and for only "several months in '06." The Court rejected his argument. It explained that Bland had spent time in jail, but that "nearly as [he] went out the door [he] rejoined the conspiracy." Reasoning that Bland was "kind of in inactive status" during his incarceration, the Court concluded that he had "never left the conspiracy." As a result, Bland's guideline range did not change. The Court granted a downward variance, imposing a sentence of 192 months of imprisonment. Bland filed a timely notice of appeal.

II.

Bland contends that the District Court erred by denying his motion for a judgment of acquittal because there was no evidence of his membership in the conspiracy at any point from 2002 through 2007. In reviewing a district court's

6

denial of a Rule 29 motion, "we review the trial record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *United States v. Claxton*, 685 F.3d 300, 305 (3d Cir. 2012) (citation, internal quotation marks, and brackets omitted). The trial record demonstrates, and our brief factual recitation confirms, that there is no merit to Bland's argument. He either was successfully recruited by Smith and Thompson or eagerly joined what he understood to be a drug organization operating in two states.

III.

Bland asserts that, even if we conclude there was sufficient evidence to uphold his conviction, the District Court erred in its computation of the quantity of drugs attributable to him. "When reviewing the sentencing decisions of the district courts, we exercise plenary review over legal questions about the meaning of the sentencing guidelines, but apply the deferential clearly erroneous standard to factual determinations underlying their application." *United States v. Collado*, 975 F.2d 985, 990 (3d Cir. 1992) (citations, internal quotation marks, and brackets omitted).

In *Collado*, we explained that "whether an individual defendant may be held accountable for amounts of drugs involved in reasonably foreseeable transactions conducted by co-conspirators depends upon the degree of the defendant's

7

involvement in the conspiracy." *Id.* at 995. We cautioned that "it is not enough to merely determine that the defendant's criminal activity was substantial. Rather, a searching and individualized inquiry into the circumstances surrounding each defendant's involvement in the conspiracy is critical to ensure that the defendant's sentence accurately reflects his or her role." *Id.*

In *United States v. Price*, 13 F.3d 711, 732 (3d Cir. 1994), we addressed Price's argument that he was inappropriately credited for cocaine dispensed by the conspiracy after he was imprisoned. We rejected "a per se rule that arrest automatically bars attribution to a defendant of drugs distributed after that date." *Id.* Yet we agreed that "since '[t]he relevant conduct provision limits accomplice attribution to conduct committed in furtherance of the activity the defendant agreed to undertake,' a defendant cannot be held responsible for conduct committed after he or she could no longer assist or monitor his or her co-conspirators." *Id.* (quoting *Collado*, 975 F.2d at 997); *see also United States v. Puig-Infante,* 19 F.3d 929, 945 (5th Cir. 1994) (observing that "[b]ecause a defendant's incarceration is not an affirmative act on the part of a defendant, it cannot, *by itself*, constitute withdrawal or abandonment" from a conspiracy, but that "incarceration may still have had some effect on the foreseeability of the acts of his coconspirators" for sentencing purposes).

Here, the District Court rejected Bland's argument that he should not be held

liable for the amount of drugs sold during his incarceration and until he rejoined the conspiracy at some point in 2006. It reasoned that Bland had not withdrawn from the conspiracy and that he immediately rejoined the conspiracy after his release. Whether Bland had withdrawn from the conspiracy, however, is not determinative of whether he should be held liable for sentencing purposes for the amount of drugs sold by his coconspirators during his incarceration and for that period of time following his release when he had yet to return to his role as a street seller. Rather, that determination must be based on his involvement in the conspiracy at the relevant period of time. *Collado*, 975 F.2d at 995. Although the District Court appropriately conducted an individualized inquiry for each defendant as *Collado* instructs, it did not focus on the circumstances surrounding Bland's involvement during either his incarceration or the eight month period following his release. *Id.*

Our review fails to reveal any evidence to support the District Court's accomplice attribution during Bland's incarceration. There is no evidence that Bland was involved in the conspiracy while in prison from October of 2003 until January 31, 2006. In fact, during the March 5, 2010 hearing, the government acknowledged as much, stating that there was "no evidence that [Bland] had any contact with" his coconspirators during his incarceration. In the absence of some evidence that Bland had any involvement in the conspiracy during his

incarceration, *see Collado*, 975 F.2d at 995, we conclude that the District Court erred by attributing to Bland the amount of drugs sold by the conspiracy for each week that he was in prison.

Furthermore, the evidence indicates that Bland was released from prison on January 31, 2006 and then arrested on October 5, 2006. During that eight month period, the trial record establishes that Bland was involved in the conspiracy selling crack cocaine for only "a couple months" before his arrest. SA826. Yet the District Court, without explanation, held Bland liable for the entire eight months of drug activity following his release from prison.

Accordingly, although we will affirm Bland's conviction, we will vacate his sentence and remand this matter for further fact finding with regard to accomplice attribution when he was incarcerated and during the eight month period following his release from prison.